## The Indianapolis, Cincinnati and Lafayette R. R. Co. *v.* Kilner, Treasurer, et al.

**Taxation.**—*Railroads.*—*Appraisement.*—Under the act of December 21st, 1858, 1 G. & H. 85, as it stood at the time for the assessment of taxes for the year 1868, it was contemplated that railroads, including all property used in running and operating the same. should be taxed as an entirety or unit ; the road to be appraised by the appraisers of all the counties through which it may run, at a meeting to be held for that purpose on the line of the road, who were to appraise the value of the road per mile through their respective counties, taking into consideration the location of such road for business, the competition of other roads, its earnings above current expenses and repairs, its condition for present and future business, so as to enable them to arrive at the actual present value of such road, independent of what it cost or the amount of its indebtedness.

**Same.**—*County Auditor.*—*Omitted Property.*—Nor was there, at the time above mentioned, any provision of the statute which authorized the county auditor to enter the part of a railroad running through his county, upon the duplicate for taxation, as omitted property.

**Same.**—*Construction of Statute.*—Sections 76, 82, 85 and 86, 1 G. & H.

94, 95, 96, all apply to personal property or to such real estate as is assessed in the ordinary method, and not to railroads, concerning which the above special mode of taxing was provided.

From the Dearborn Circuit Court.

*O. B. Liddell,* for appellant.

WORDEN, J.—This was an action of replevin, brought by the appellant against the appellees, to recover possession of a certain railroad locomotive engine.

Issue; trial by the court; finding and judgment for the defendants.

The plaintiff was the owner of the engine, but it had been seized by the defendant Kilner, as treasurer of Dearborn county, in order to make certain taxes charged upon the White-Water Valley Railroad, but in the name of the "Harrison Branch of the I. & C. Railroad."

The plaintiff was the lessee of the White-Water Valley Railroad at the time of the assessment of the taxes in question, and was bound, we suppose, to pay them if properly assessed. But the appellant insists that the taxes had not been properly assessed, and could not, therefore, be legally collected. If this be the case, it follows that the treasurer had no right to seize the engine for the payment of the taxes. The taxes charged were for the year 1868, and stood upon the tax duplicate as follows:

"Harrison Branch of the I. & C. Railroad; $7\frac{1}{10}$ miles at $2,500 per mile."

The total amount of taxes was $401.15.

The point in reference to the assessment may be best developed by setting out the testimony of Richard D. Slater, who testified as follows:

"I am auditor of Dearborn county; I have been since 1867; the book now presented is the tax duplicate of Dearborn county for the year 1868; the tax levied against the Harrison Branch of the I., C. & L. R. R. is on $7\frac{1}{10}$ miles of railroad running through Harrison township,

in Dearborn county; it is a part of the road running from Valley Junction, Ohio, to Brookville, Indiana; it intersects the Indianapolis, Cincinnati and Lafayette Railroad at Valley Junction; the return of the assessor for Harrison township for the year 1867 as to said railroad has been lost or misplaced, so that it can not be found after diligent search; it was returned to me as the Harrison Branch of the I. & C. R. R. Co.; the I. & C. Co. paid tax for 1867, and made no objection to the name of the road as assessed; the true name of the road is the White Water Valley Railroad Company, but it has been commonly called the Harrison Branch of the I., C. & L. R. R. Co.; the tax on that road, the W. W. V. R. R. Co., for 1868, has not been paid; after the return of the road for 1867, as the Harrison Branch of the I. & C. R. R. Co., I continued it by the same name on the duplicate for 1868; at that time I knew of no other name by which to assess this property but that of the Harrison Branch of the I. & C. R. R.; I copied the name of the road in 1867 from the return by the assessor for that year onto the duplicate; I made the assessment in 1868, as auditor, from the best information I could get; I had a surveyor to survey it in 1867; I called on the company for the length of the road in my county, Dearborn, but could not get it; there was no new list made out for 1868, nor any new papers in regard to the assessment for 1868, that had not been made in 1867; no list of any kind for 1868 was furnished for that road by the railroad company; I called on the company in 1867 for the length of their road in Harrison township, but did not get it; when they failed to give it to me, I had Mr. McMullen, a surveyor, to measure it; I made the assessment for 1868 from the best information I could get, and that information was:

"First. The length of the road that I obtained, as before stated, from the survey of Mr. McMullen, made in 1867.

" Second. In regard to the value per mile I fixed from the basis of the assessment of 1867, being $2,500 per mile. I made no tax list for 1868 outside of the duplicate itself.

" I made the assessment on said Harrison Branch for 1868 as omitted property ; I made no inquiry of the officers as to the basis of the assessment for 1868, but made from my knowledge of business and value of the road ; I have known this road ever since it was built ; I do not remember when the road was completed ; the first assessment was made in 1867 ; Valley Junction is in the State of Ohio ; the road enters Dearborn county, Indiana, a mile or a mile and a half below Harrison, Indiana ; from Valley Junction to the Indiana line the road all lies in the State of Ohio ; that part of the road lying in Ohio is fou. or five miles long ; prior to 1869, I made no inquiry at the office of the secretary for the correct name of the road in question ; the road passes out of Dearborn into Franklin county, northward."

From the foregoing facts, as detailed by the auditor, it seems to us there was no such assessment of the road in question as would justify the collection of the tax for the year 1868. We pass over the mistake in the name in which the assessment was made as, perhaps, unimportant. The assessment thus made by the auditor would, it seems to us, have been invalid had it been in the correct name.

The act of December 21st, 1858, 1 G. & H. 85, seems to have been in force at the time of the assessment, except so far as it may have been modified or repealed by the act to be found in the acts of the called session of 1865, at page 121. See, in connection with the act last above mentioned, the act of March 9th, 1867. Acts 1867, p. 164.

The act of December 21st, 1858, contemplated taxing railroads, including all property used in running and operating the same, as an entirety or unit ; the road to be ap-

praised by the appraisers of all the counties through which it may run, at a meeting to be held for that purpose on the line of the road, who were to appraise the value of the road per mile through their respective counties, taking into consideration " the location of such road for business, the competition of other roads, its earnings above current expenses and repairs, its condition for present and future business, so as to enable them to arrive at the actual present value of such road, independent of what it cost, or the amount of its indebtedness." See the case of *The Toledo and Wabash R. R. Co.* v. *The City of Lafayette*, 22 Ind. 262.

We are not aware that up to the time of the assessment in question there was any other method provided for the appraisement of railroads for the purpose of taxation. The act of 1865, above cited, also contemplates an appraisement by the appraisers of all the counties through which the road may run, or a majority of them ; but the appraisement contemplated by that act was not to take place until after the first Monday of April, 1869.

It is apparent from the evidence set out, that the road in question runs through or into more than one county in the State, and that it was not appraised as contemplated by the law for the purpose of taxation. Nor are we aware of any provision of the statute which authorized the auditor to enter the part of the road running through his county, upon the duplicate for taxation, as omitted property. We have no brief for the appellees, and are not advised upon what ground it was held below that the taxes were properly assessed.

It is said in the brief of counsel for the appellant, that it was claimed in the court below that the assessment could have been and was properly made under sections 76, 82, 85 and 86, 1 G. & H. 94, 95 and 96. These sections all apply evidently to personal property, or to such real estate

as is assessed in the ordinary method, and not to railroads, concerning which the special mode of taxing, above indicated, was provided.

The judgment below is reversed, with costs, and the cause remanded for a new trial.